UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL LA ROY DIGGS,

    Plaintiff,

v.

CALIFORNIA DEPARTMENT OF STATE HOSPITAL, et al.,

    Defendants.

Case No. 19-cv-06517-EMC

**ORDER OF SERVICE**

Docket No. 10

## I.     INTRODUCTION

Michael La Roy Diggs, an inmate currently at Patton State Hospital, filed this *pro se* civil rights action under 42 U.S.C. § 1983 to complain about events and omissions at Napa State Hospital, where he earlier was housed. The Court dismissed the complaint with leave to amend so that Mr. Diggs could cure numerous pleading deficiencies. He then filed a first amended complaint, which is now before the Court for review under 28 U.S.C. § 1915.

## II.     BACKGROUND

Mr. Diggs is in the state hospital system following a determination in a criminal case that he was not guilty by reason of insanity. See Docket No. 1 at 5 (referring to Diggs' "petition for restoration of sanity and release to outpatient community treatment"). The present action concerns impediments to his efforts to obtain his release from the state hospital. According to Mr. Diggs, he objected to participating in a 12-step substance abuse recovery treatment program due to its religious component. His objections and protests allegedly led persons at Napa State Hospital (NSH) to retaliate against him by impeding his progress toward obtaining release and by making false statements and false reports that caused his petition for release based on the restoration of his

sanity to fail.  He also alleges a few miscellaneous claims.  The particulars of his claims are set out in the next section.

### III.  DISCUSSION

A. Review of First Amended Complaint

In an action in which a non-prisoner plaintiff seeks to proceed *in forma pauperis*, a district court may screen the complaint to fulfill its duty under 28 U.S.C. § 1915(e)(2)(B), which requires the court to dismiss a case if the court determines that the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief.  *Pro se* pleadings must be liberally construed.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

1. Disciplinary Offense

Mr. Diggs makes some confusing allegations about a disciplinary offense.  He alleges that drugs allegedly were mailed to him at the hospital, but he never received the drugs, was not found in possession of the drugs, and "the case was closed with no charges filed.  Yet [he] was subject to disciplinary credit time loss with no hearing, no evidence produced against [him], nor the ability to appeal the decision" in January 2017.  Docket No. 10 at 2-3.  He alleges that the State of California, Napa State Hospital, and Department of State Hospitals violated his right to due process because they "take disciplinary action which affects the longevity of a patient's time of confinement without observing constitutionally protected rights." *Id.* at 3.

The first amended complaint fails to state a claim upon which relief may be granted for the alleged disciplinary credit time loss.  The Court earlier dismissed the State of California, Napa State Hospital (NSH) and the California Department of State Hospitals (DSH) because they had

2

Eleventh Amendment immunity. See Docket No. 9 at 7.[1] Mr. Diggs cannot pursue his claim against the State of California, NSH, or DSH.   And he did not identify any individual defendants for this claim, despite the Court's explicit instruction that Mr. Diggs "must link individual defendants to each claim by alleging facts showing the basis for liability for each individual defendant." *Id.* He has not linked any individual defendant to this claim. Further leave to amend will not be granted because the Court explained the need to link individual defendants and Mr. Diggs was unable or unwilling to do so in his first amended complaint.[2]

### 2. Religious Freedom

Mr. Diggs alleges that his religious freedom rights were violated because he was required to attend and participate in NA/AA/MA programs that had a religious component, despite his objection that the programs violated the Establishment Clause. Docket No. 10 at 3-4. Mr. Diggs alleges that, when he complained about the violation of his rights, he was told that he would not be released from the hospital unless he participated in the program.   Amy Davis, Patricia Tyler, Stephanie Clendenin,[3] and Sterling Price allegedly required Mr. Diggs to take part in the program he objected to on religious grounds.

The First Amendment provides that "Congress shall make no law respecting an

---

[1] In the order of dismissal with leave to amend, the Court determined that the institutional defendants – i.e., the State of California, California Department of State Hospitals, and Napa State Hospital – must be dismissed from this action because they have Eleventh Amendment immunity. Docket No. 9 at 7.   The Eleventh Amendment to the U.S. Constitution bars from the federal courts suits against a state by its own citizens, citizens of another state, or citizens or subjects of any foreign state, absent consent to the filing of such suit. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 237-38 (1985).   Eleventh Amendment immunity extends to suits against a state agency, *see, e.g., Brown v. Cal. Dep't of Corrs.,* 554 F.3d 747, 752 (9th Cir. 2009) (California Department of Corrections and California Board of Prison Terms entitled to 11th Amendment immunity).   Mr. Diggs nonetheless included these entities as defendants in his first amended complaint.   The State of California, DSH, and NSH are dismissed because they have Eleventh Amendment immunity from the claims alleged.

[2] If Mr. Diggs lost time credits that will inevitably affect the duration of his confinement, his sole recourse in federal court is to file a petition for writ of habeas corpus to challenge the decision.   He must exhaust state court remedies by presenting his claims to the California Supreme Court to give that court a fair opportunity to rule on the merits of his claims before filing a federal petition for writ of habeas corpus. *See* 28 U.S.C. § 2254(b).

[3] Mr. Diggs identifies Stephanie "Clenindimd" as the DSH Director.   The DSH website lists the director as Stephanie Clendenin, and the Court uses that spelling of her name.

establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend I. "The first of the two Clauses, commonly called the Establishment Clause, commands a separation of church and state. The second, the Free Exercise Clause, requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). Requiring an inmate or patient to attend a program that is rooted in religious beliefs, such as the AA/NA program for recovery from substance abuse, as a condition of release from custody violates the First Amendment's Establishment Clause. *See Inouye v. Kemna*, 504 F.3d 705, 712-13 (9th Cir. 2007); *see, e.g., id.* (parole officer violated Establishment Clause by requiring, as a condition of parole, that parolee to attend AA/NA meetings that were rooted in a regard for a higher power).

Liberally construed, the first amended complaint states a First Amendment claim against Amy Davis, Patricia Tyler, Stephanie Clendenin, and Sterling Price, who allegedly required Mr. Diggs to partake in a program he objected to on religious grounds. A claim is not stated against the State of California, NSH, or DSH because these entities have Eleventh Amendment immunity.

3. <u>Retaliation</u>

Mr. Diggs refused to participate further in the NA/AA/MA meetings after July 19, 2017. Amy Davis, Patricia Tyler, Stephanie Clendenin, and Sterling Price then "halted [Mr. Diggs'] progress toward release by refusing to grant [his] discharge level in retaliation for [his] refusal to continue to participate in the NA/AA/MA meetings," despite the fact that he was supposed to "advance to discharge in August 2017." Docket No. 10 at 4. Even after it was determined in October 2017 that Mr. Diggs no longer needed to participate in the 12-step program and could instead follow his own SMART Recovery program, Amy Davis and Patricia Tyler retaliated by denying him "discharge level" in December 2017 and March 2018 despite the fact that he met all the requirements. *Id.* at 4-5. Stephanie Clendenin and Sterling Price were notified of these violations and allowed them to persist. *Id.* at 5. They also allegedly took back a Transition Level advancement in April 2018 to retaliate. *Id.* at 6. During his time in the ISRU from February 2017 through September 2019, Mr. Diggs was denied benefits and program participation by Amy Davis, Patricia Tyler, and Cindy Black (as well as Stephanie Clendenin and Sterling Price who

4

were made aware of the denials) because he "refused to espouse belief in god, which is a requirement in order to participate in off unit groups." *Id.* at 7.

The elements of a retaliation claim are (1) that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Liberally construed, the first amended complaint states a cognizable claim against defendants Davis, Tyler, Black, Clendenin, and Price for retaliation based on their adverse actions against Mr. Diggs after he refused to take part in the 12-step program based on a religious objection. A claim is not stated against the State of California, NSH, or DSH because these entities have Eleventh Amendment immunity.

4. Verbal Harassment

The first amended complaint alleges that an "intentional verbal attack on [Mr. Diggs'] person [was made] by the Unit Supervisor designed to stimulate [Mr. Diggs] to the point of aggression" after Mr. Diggs' "Transition Level" was taken away for failing to meet the required attendance at the SMART Recovery program – a failure he blames on Amy Davis. Docket No. 10 at 5. According to Mr. Diggs, staff wanted to provoke him so hospital police could use force and medication on him, but he does not allege that physical force or medication was used on him. *See id.* at 5-6. He also alleges that there was a "continual and malicious use of threats, intimidation and fear." *Id.* at 7.

The allegations of verbal harassment fail to state a claim. Verbal harassment alone is not actionable under 42 U.S.C. § 1983. *See Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir.1997), *overruled in part on other grounds by Shakur v. Schriro,* 514 F.3d 878, 884–85 (9th Cir.2008); *Rutledge v. Arizona Bd. of Regents*, 660 F.2d 1345, 1353 (9th Cir.1981*), aff'd sub nom. Kush v. Rutledge*, 460 U.S. 719 (1983); *see, e.g., Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir.1996), amended 135 F.3d 1318 (9th Cir.1998) (disrespectful and assaultive comments by prison guard not enough to implicate 8th Amendment); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th

5

1    Cir.1987) (directing vulgar language at prisoner does not state constitutional claim); *Burton v.*
2    *Livingston,* 791 F.2d 97, 99 (8th Cir.1986) ("mere words, without more, do not invade a federally
3    protected right"). Other than possibly experiencing feelings of stress and agitation, Mr. Diggs
4    does not allege that there was any consequence of the verbal harassment. The claim is dismissed.

5         5.     Disability Discrimination

6    Mr. Diggs alleges that throughout his time in the ISRU from February 2017 through
7    September 2019, he was "discriminated on because of [his] disability, Amphetamine Use
8    Disorder," by Amy Davis, Patricia Tyler and Cindy Black "through segregation and denial of
9    benefits of program activities" "because [he] refused to espouse belief in god, which is a
10   requirement in order to participate in off unit groups." Docket No. 10 at 7. He claims that this
11   violated his rights under the Americans With Disabilities Act and Rehabilitation Act of 1973. *Id.*
12   He further alleges that Stephanie Clendenin and Sterling Price were notified of these violations
13   and allowed them to persist. *Id.*

14   Title II of the Americans With Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("ADA"), and
15   § 504 of the Rehabilitation Act, as amended and codified in 29 U.S.C. § 701 *et seq.* ("RA"),
16   prohibit discrimination on the basis of a disability in the programs, services or activities of a
17   public entity. Federal regulations require a public entity to "make reasonable modifications in
18   policies, practices, or procedures when the modifications are necessary to avoid discrimination on
19   the basis of disability, unless the public entity can demonstrate that making the modifications
20   would fundamentally alter the nature of the service, program, or activity." 28 C.F.R.
21   § 35.130(b)(7). The elements of a cause of action under Title II of the ADA are: (1) the plaintiff is
22   an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive
23   the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either
24   excluded from participation in or denied the benefits of the public entity's services, programs or
25   activities, or was otherwise discriminated against by the public entity; and (4) such exclusion,
26   denial of benefits, or discrimination was by reason of the plaintiff's disability. *Thompson v. Davis*,
27   295 F.3d 890, 895 (9th Cir. 2002). A cause of action under § 504 of the RA essentially parallels
28   an ADA cause of action. *See Olmstead v. Zimring*, 527 U.S. 581, 590 (1999); *Duvall v. County of*

1   *Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).

2   Even with liberal construction, these allegations do not state a claim for relief under the Americans With Disabilities Act or the Rehabilitation Act. The allegations of the first amended complaint plainly state that it was Mr. Diggs' protests and refusal to participate in programs due to his religious objection, rather than any disability, that caused him to be removed from the program and denied advancement toward discharge from the hospital. The retaliation claim has been found cognizable, as mentioned above.

   6.   False Statements and Reports in State Court Proceedings

   Patricia Tyler and Cindy Black allegedly "directed their subordinates to write reports to the court giving information which was knowingly untrue" about Mr. Diggs' mental illness and treatment needs. Docket No. 10 at 8. In some instances, Ms. Tyler and Ms. Black "even signed court reports which clearly lied about [Mr. Diggs and his] conduct with the intention of retention." *Id.*

   This claim for false statements and reports in the state court is barred by the *Heck* rule because the claims are so closely tied to Mr. Diggs' alleged entitlement to release from custody. As the Court explained in the order of dismissal with leave to amend:

   > In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Supreme Court held that a plaintiff cannot bring a civil rights action for damages for a wrongful conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, unless that conviction or sentence or other decision already has been determined to be wrongful. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). A conviction or sentence may be determined to be wrongful by, for example, being reversed on appeal or being set aside when a state or federal court issues a writ of habeas corpus. *See id.* Although *Heck* was decided in the context of a challenge to a criminal conviction, it has since been interpreted to bar damages claims based on prison disciplinary decisions that result in the loss of time credits, *see Edwards v. Balisok*, 520 U.S. 641 (1997), damages claims based on the denial of parole, *see Butterfield v. Bail*, 120 F.3d 1023, 1024 (9th Cir. 1997), damages claims based on the revocation of parole, *see Littles v. Board of Pardons and Paroles Div.*, 68 F.3d 122, 123 (5th Cir. 1995), and damages claims based on civil commitment decisions, *see Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1139-40 (9th Cir. 2005). The *Heck* rule also prevents a person from bringing an action that--even if it does not directly challenge the conviction or other decision--would imply that the conviction or other decision was invalid. The practical importance of the *Heck* rule is that plaintiffs

7

> cannot attack their convictions or sentences in a civil rights action for damages and instead must have successfully attacked the decision before filing the civil rights action for damages
>
> The *Heck* rule applies to Mr. Diggs' claim because a decision in his favor on his claim would imply that the superior court's decision to reject his petition for restoration of sanity was wrong because it was based on false evidence. Although dubbed a "petition for restoration of sanity," the purpose of the petition is to obtain release from the hospital; if the petition is granted, the person is released from the state hospital and put in a conditional release program without outpatient treatment. *See* Cal. Penal Code § 1026.2(a), (e). This sequence is analogous to a decision to place a prisoner on parole, and therefore the *Heck* rule applies just as it does to a challenge to a denial of parole. *See Butterfield*, 120 F.3d at 1024 ("Few things implicate the validity of continued confinement more directly than the allegedly improper denial of parole"). Mr. Diggs does not cast his claims as a direct challenge to the superior court's denial of his petition for restoration of sanity, but the *Heck* rule still applies because success on his claims would call into question the validity of the decision to deny the petition for restoration of sanity. His theory of relief is that the allegedly false statements/reports made by hospital officials in retaliation for him objecting to participating in the AA/NA program undermined his ability to succeed on his petition for restoration of sanity.

Docket No. 9 at 4-6.

Nothing alleged in the first amended complaint shows that his claim that Defendants presented false evidence in the state court proceedings held to determine whether Mr. Diggs should be released changes the Court's determination that this claim is barred by *Heck*. The claim is dismissed.[4]

7. <u>Gender Discrimination</u>

Mr. Diggs alleges that "NSH" discriminates based on gender in the ISRU program because male patients with a history of substance use are forced into the program and rarely allowed to leave it unless discharged while women and transgendered persons who have substance use disorders are not required to participate in the program. Docket No. 10 at 9. Amy Davis created this men-only program in a facility that houses both men and women.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall

---

[4] As the Court explained in the order of dismissal with leave to amend, if Mr. Diggs wants to challenge the superior court's decision to deny his petition for restoration to sanity, his sole recourse in federal court is to file a petition for writ of habeas corpus, after he exhausts state court remedies. *See* Docket No. 9 at 6 n.3.

8

'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

Liberally construed, the first amended complaint states a cognizable claim against Ms. Davis for violating Mr. Diggs' right to equal protection.

B.    Second Request For Appointment Of Counsel

Mr. Diggs has requested for the second time that counsel be appointed to represent him in this action. Docket No. 10 at 9. A district court has the discretion under 28 U.S.C. §1915(e)(1) to designate counsel to represent an indigent civil litigant in exceptional circumstances. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). This requires an evaluation of both the likelihood of success on the merits and the ability of the plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved. *See id.* Neither of these factors is dispositive and both must be viewed together before deciding on a request for counsel under § 1915(e)(1). Exceptional circumstances are not present in this action. Mr. Diggs has been able to adequately articulate his claims and they do not appear to be particularly complex. Mr. Diggs' request for appointment of counsel to represent him in this action therefore is **DENIED**.

## IV.    CONCLUSION

1.    The first amended complaint, liberally construed, states cognizable claims against Amy Davis, Patricia Tyler, Cindy Black, Sterling Price, and Stephanie Clendenin as described above. All other defendants are dismissed.

2.    The Clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the first amended complaint, and a copy of all the documents in the case file upon the following defendants:

- Amy Davis
- Patricia Tyler
- Cindy Black
- Sterling Price
- Stephanie Clendenin

(Ms. Davis, Ms. Tyler, and Ms. Black apparently work at Napa State Hospital. Mr. Price and Ms. Clendenin apparently work at the California Department of State Hospitals.)

9

3. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

    a. No later than **November 27, 2020,** Defendants must file and serve a motion for summary judgment or other dispositive motion. If Defendants are of the opinion that this case cannot be resolved by summary judgment, Defendants must so inform the Court prior to the date the motion is due. If Defendants file a motion for summary judgment, Defendants must provide to Plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012).

    b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendants no later than **January 7, 2021**. Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

    c. If Defendants wish to file a reply brief, the reply brief must be filed and served no later than **January 22, 2021**.

4. Plaintiff is provided the following notices and warnings about the procedures for motions for summary judgment:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

If Defendants file a motion for summary judgment for failure to exhaust administrative remedies,

it is seeking to have the case dismissed. As with other defense summary judgment motions, if a motion for summary judgment for failure to exhaust administrative remedies is granted, Plaintiff's case will be dismissed and there will be no trial.

5. All communications by Plaintiff with the Court must be served on Defendant's counsel by mailing a true copy of the document to Defendant's counsel. The Court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, Plaintiff may mail a true copy of the document directly to the defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to the party.

6. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

7. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

8. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

9. Plaintiff's request for appointment of counsel is **DENIED**. Docket No. 10 at 9.

**IT IS SO ORDERED**.

Dated: September 9, 2020

_____
EDWARD M. CHEN
United States District Judge