UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LAROY DIGGS,<br><br>  Plaintiff,<br><br>  v.<br><br>AMY DAVIS, et al.,<br><br>  Defendants. | Case No. 19-cv-06517-EMC<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Docket No. 52 |

## I. INTRODUCTION

In this *pro se* prisoner's civil rights action, Michael La Roy Diggs, an inmate at the Patton State Hospital, complains about events and omissions at Napa State Hospital, where he earlier was housed. This matter is now before the Court for consideration of Defendants' motion for summary judgment. *See* Docket No. 52 ("MSJ" or "Summary Judgment Motion"). This order **DENIES** Defendants' motion because there are triable issues of material fact as to Mr. Diggs's claim. The Court will refer this case to the *Pro Se* Prisoner Mediation Program.

## II. BACKGROUND

Mr. Diggs alleges that, while detained at Napa State Hospital, he was forced to attend a 12-step substance abuse recovery treatment program that contained religious components. As explained in the Court's prior order, the only claim remaining in this action is Mr. Diggs's claim that Defendants Black and Davis violated his First Amendment rights by forcing him to attend a religious program. *See* Docket No. 43 at 2.

///

///

The following facts are undisputed unless otherwise noted.[1]

A.   The Parties

The relevant events happened between February 2017 and September 2019.  During the relevant period, Mr. Diggs was a resident at Napa State Hospital.  Docket No. 10 ("FAC") at 3.

The Defendants are Cindy Black, an Executive Director at Napa State Hospital, and Amy Davis, a Substance Abuse Recovery Coordinator at Napa State Hospital.  *See id*. at 6.

B.   Mr. Diggs's Treatment

Mr. Diggs was charged in Alameda County Superior Court with murder, with a prior conviction for carjacking.  Docket No. 23-1 at 11.  He was found not guilty by reason of insanity, and was referred to Napa State Hospital for treatment.  *Id*.

In addition to psychiatric disorders, Mr. Diggs was diagnosed with substance abuse disorders.  *Id*. at 2.  At Napa State Hospital, Mr. Diggs was placed in the "Intensive Substance Recovery Unit" ("ISRU"), which "promotes comprehensive treatment for patients . . . who have co-occurring mental illness and substance dependence or a drug induced psychotic disorder."  Docket No. 23 at 34.

In the FAC, Mr. Diggs alleges that while he was housed in the ISRU, he was forced "to participate in a NA/ AA/ MA based program" as a condition of his release from Napa State Hospital.  FAC at 3.  He explains that the treatment program in the ISRU consists of three levels: Admission, Transitional, and Discharge.  *See id*. at 4.  To proceed through the levels, patients must fulfill certain criteria.  Mr. Diggs contends that these criteria include participation in NA/ AA/ MA meetings.  *See id*.  Mr. Diggs contends that these programs required him "to espouse [a] belief in god."  *Id*. at 7.

Defendants explain that Mr. Diggs was placed on the ISRU in February 2017.  See Docket No. 52-4 ("Black Decl.") ¶ 18.  Mr. Diggs was initially given Level I status, which is a status with a "four month service at minimum."  *Id*. ¶ 19.  Level I patients "are not allowed off the unit

---

[1] Defendants sought judicial notice of documents related to Mr. Diggs's criminal record and sentence.  *See* Docket Nos. 52-1, 52-5.  Defendants' request is denied because these documents are unnecessary to the instant decision.  Denial is without prejudice to Defendants introducing these documents at a later stage of this action if the documents become relevant.

1    including for meals except for unit sponsored walk groups or vising center during the first 30
2    days." *Id*.

3         Mr. Diggs claims that he was required to attend thirty-five meetings of the challenged NA/
4    AA/ MA program between February 2017 and July 2017.  *See* FAC at 3.  After July 19, 2017, Mr.
5    Diggs refused to participate in these meetings.  *See id*. at 4.  Mr. Diggs contends that, because of
6    his refusal to attend NA/ AA/ MA meetings, he was maintained on the Transitional level and not
7    advanced to the Discharge level.  *See id*.

8         Defendants represent that a secular alternative, SMART Recovery, was available to
9    patients at Napa State Hospital.  *See* MSJ at 4-5.  It is undisputed that, in or before October 2017,
10   Mr. Diggs began to attend SMART Recovery meetings.  Docket No. 23-2 at 18; *see also* FAC at
11   4.  The parties dispute whether this alternative was made available to Mr. Diggs before October
12   2017.

13        Defendants represent that SMART Recovery was "offered at an off-unit mall site for many
14   years prior to" Mr. Diggs's placement on the ISRU.  MSJ at 5.  Defendants also represent that
15   "every patient *is* provided with information about the various substance recovery programs
16   available, including" SMART Recovery, when the patient is committed to the ISRU.  *Id*. at 4
17   (emphasis added).  Specifically, Defendants represent that this information is provided to the
18   patient in an Orientation Packet.  *See id*. at 6.

19        Mr. Diggs disputes Defendants' representations about the availability of this secular
20   alternative.  *See generally*, Docket No. 55 ("Opposition").  He represents that he was not given a
21   secular alternative to NA/ AA/ MA meetings, and cites to a May 2016 Orientation Packet as proof
22   that he was not told of the secular SMART Recovery alternative.  *See id*. at 5 (citing Docket No.
23   23, Ex. 1 ("2016 Packet")).  As to the meetings requirement, the 2016 Packet explains that "[a]ll
24   patients are required to attend 12-step meetings during each level.  Meetings are held on unit . . . ."
25   *Id*. at 5.

26        The 2016 Packet also states that "Detox patients and Level I patients will reside" on a
27   "locked corridor" and "will not be allowed to participate in hospital wide activities," although
28   "some Level I patients can guest out to groups and activities."  2016 Packet at 2.  "Level II

3

1  patients are allowed to participate in all unit groups and hospital[-]wide activities with unit staff
2  supervision"; and "Level III patients . . . meet the criteria for a discharge unit and have grounds
3  access cards for all hospital[-]wide activities," which "includes daily access to the mall." 2016
4  Packet at 2.

5      Mr. Diggs also provides a worksheet dated November 2016, which provides the criteria to
6  transition from Level II to Level III. *See* Docket No. 23, Ex. 2 ("2016 Worksheet"). The 2016
7  Worksheet requires a patient to state that he "ha[d] completed at least steps 1-3" and that he "ha[d]
8  attended 80% of all AA/ NA meetings for three months." *Id*. at 2. The 2016 Worksheet does not
9  state that SMART Recovery may be substituted in place of "AA/ NA meetings." *See id*.

10     Finally, Mr. Diggs provides logs used to verify participation in "12-step meetings."
11 Docket No. 23, Exs. 3, 4 ("Logs"). The logs have columns to chart a patient's participation in
12 "AA," "NA," "DRA," or "MA." *Id*. The logs do not have a column to chart a patient's
13 participation in SMART Recovery. *See id*.

14 ### III.    VENUE AND JURISDICTION

15     Venue is proper in the Northern District of California because the events or omissions
16 giving rise to the complaint occurred at a state hospital in Napa County, which is located within
17 the Northern District. *See* 28 U.S.C. §§ 84, 1391(b). The Court has federal question jurisdiction
18 over this action brought under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1331.

19 ### IV.    SUMMARY JUDGMENT MOTION

20 A.    Legal Standard

21     Summary judgment is proper where the pleadings, discovery and affidavits show that there
22 is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as
23 a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party
24 who fails to make a showing sufficient to establish the existence of an element essential to that
25 party's case, and on which that party will bear the burden of proof at trial . . . since a complete
26 failure of proof concerning an essential element of the nonmoving party's case necessarily renders
27 all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is
28 material if it might affect the outcome of the lawsuit under governing law, and a dispute about

4

such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact.  The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.  Once the burden shifts to the non-moving party, that party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The non-moving party "must show more than the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252). "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252).  If the non-moving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323.

A court's obligation to view evidence in the light most favorable to the non-movant does not require it to ignore undisputed evidence produced by the movant.  *See L.F. v. Lake Wash. Sch. Dist.*, 947 F.3d 621, 625 (9th Cir. 2020).  Even pro se litigants must identify or submit some competent evidence to support a claim.  *See Soto v. Sweetman*, 882 F.3d 865, 873 (9th Cir. 2018) (plaintiff not entitled to equitable tolling where he failed to submit any competent evidence in his opposition).  Nor is it the task of the district court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  A party opposing summary judgment must identify with reasonable particularity the evidence that precludes summary judgment.  *Id.; see also Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29, 1031 (9th Cir. 2001) (even if there is evidence in the court file which creates a genuine issue of material fact, a court may grant summary judgment if the opposing papers do not include or conveniently refer to that evidence).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is

based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Statements of fact in Mr. Diggs's FAC are considered as evidence in evaluating the motion for summary judgment because he verified the FAC. *See* FAC at 10.

A court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *See id*. at 631.

B.  Discussion

Defendants argue that a prisoner-patient's First Amendment rights are not violated when an institution requires attendance at recovery meetings, so long as some secular treatment option is made available. *See* MSJ at 15. While this correctly summarizes the law, here the parties dispute whether a secular treatment option was available to Mr. Diggs.

1.  The Factual Dispute

*Inouye v. Kemna* is instructive. 504 F.3d 705, 716 (9th Cir. 2007). In *Inouye*, the plaintiff was sentenced for drug crimes, and both his incarceration and the terms of his subsequent parole involved drug treatment programs. *See id*. at 709. Despite his objection to religion-based treatment programs, the plaintiff was required to "participat[e] in AA/NA meetings, which are rooted, the parties agree, in a regard for a 'higher power.'" *Id*. at 710. The plaintiff participated in these meetings for a few months, after which he refused to participate any longer and his parole was revoked. *See id*. He sued for violation of his First Amendment rights, and the district court granted summary judgment in favor of the defendants on qualified immunity grounds. *See id*. On appeal, the Ninth Circuit observed that "it is essentially uncontested that requiring a parolee to attend religion-based treatment programs violates the First Amendment." *Id*. at 712. The opinion

1    specifically distinguished the case at bar from those where there was evidence the plaintiff had
2    been provided a choice of programs, which, because of that choice, did not offend the First
3    Amendment.  *See id*. at 715 (distinguishing *In re Garcia,* 106 Wash. App. 625, 24 P.3d 1091,
4    1096–97 (2001)), 716 (distinguishing *O'Connor v. State of Cal.*, 855 F. Supp. 303, 305 (C.D. Cal.
5    1994)).  Because "[t]here [wa]s no evidence that Inouye was ever told that he had a choice of
6    programs," summary judgment was inappropriate.  *Id*. at 711.[2]
7        Here, Defendants argue that attendance at AA/ NA/ MA meetings was not mandatory:

> Mr. Diggs was never forced to attend AA/NA/MA. He was presented with the available options including the SMART Recovery program and the other secular substance abuse programs upon his admission to the Intensive Substance Recovery Unit (ISRU). He chose to attend AA by his own volition. When he voiced his religious objections, he was directed to the SMART Recovery program . . . .

MSJ at 17; *see also id.*, *passim*.  To support this argument, Defendants rely on a declaration from Defendant Davis that SMART Recovery had been offered off-site at a mall to ISRU patients long before Mr. Diggs was housed on the ISRU, and that every DSH-Napa patient "*is* provided with" information about both religious and secular recovery programs upon entrance to the facility.  *See id*. at 4-5 (emphasis added; citing Davis Decl. ¶¶ 7-10).

    Mr. Diggs disputes Defendants' representations.  First, he states that he was not given the opportunity to attend SMART Recovery meetings until October 2017, eight months after he entered the ISRU.  *See* FAC at 4:24-25.  Second, Mr. Diggs argues that upon his entry to the ISRU, he was not informed of any secular recovery meetings, and was instead informed that he was required to attend recovery meetings which happen to have a religious component.  *See* Opp. at 3-4.  Third, Mr. Diggs argues that Defendant Davis misrepresented the information provided to patients as they enter the facility to suggest that they are told of the availability of SMART Recover, when in fact they are not.  *See id*. at 3.  Mr. Diggs supports this argument by pointing to

---

[2] *See also Martin v. City of Boise*, 920 F.3d 584, 609-610 (9th Cir. 2019) (summary judgment was inappropriate where there were "facts in dispute concerning whether" a temporary housing program to which plaintiffs had been ordered had a religious component); *Janny v. Gamez*, 8 F.4th 883, 908 (10th Cir. 2021) (summary judgment inappropriate where the parties disputed whether the state ordered plaintiff to participate in religious component of program), *cert. dismissed sub nom. Carmack v. Janny,* 142 S. Ct. 878 (2022).

a May 2016 Orientation Packet which mentions only NA/ AA/ MA meetings, and does not mention the availability of SMART Recovery. *See id*. at 5 (citing 2016 Packet). The 2016 Packet details the freedoms given to patients at Levels I, II, and III of the ISRU, and grants mall access only to Level III patients. *See* 2016 Packet at 2. The 2016 Packet also states that "[a]ll patients are required to attend 12-step meetings during each level," and that those "[m]eetings are held on unit . . . ." *Id*. at 5. Finally, Mr. Diggs provides a worksheet and logs he was required to complete to transition between levels, all of which mention attendance at AA/ NA/ MA meetings, and none of which mention the alternative of attending SMART Recovery. *See* 2016 Worksheet, Logs.

Mr. Diggs has raised a dispute of material fact as to whether he was permitted to attend SMART Recovery meetings between February and September 2017. First, Defendants' only evidence is a declaration by one of the Defendants. *See generally*, Davis Decl. The Davis Declaration makes the general statement that, "At the beginning of each patient's commitment to DSH-Napa, every patient is provided with information about the various substance recovery programs available, including . . . SMART Recovery." *Id*. ¶ 7. The Davis Declaration does not support this conclusion with any facts. For example, Defendant Davis does not provide a document conveying this information to patients, nor does she state that she personally witnessed this information being conveyed orally. *See id*. The Davis Declaration therefor does not conclusively establish what a patient may or may not be told upon entry to DSH-Napa.

Second, although the Davis Declaration represents that patients are informed of the availability of SMART Recovery upon their entry to ISRU, *see id*. at ¶ 19, Mr. Diggs provides documents which suggests this is not so. The 2016 Packet, 2016 Worksheet, and Logs made no mention of the SMART Recovery alternative. Instead, the 2016 Packet explains that "[a]ll patients are required to attend 12-step meetings during each level. Meetings are held on unit . . . ," 2016 Packet at 5; the 2016 Worksheet required Mr. Diggs to state that he "ha[d] completed at least steps 1-3" and that he "ha[d] attended 80% of all AA/ NA meetings for three months," 2016 Worksheet at 2; and the Logs charted Mr. Diggs's participation in "AA," "NA," "DRA," or "MA," and made no mention of SMART Recovery, *see* Logs. Even if a patient "is" provided with information regarding SMART Recovery now, Davis Decl. ¶¶ 7, 12, Defendants have not

8

introduced evidence showing what information *was* provided to Mr. Diggs *in February 2017*. By contrast, the 2016 Packet was published prior to Mr. Diggs's February 2017 placement on ISRU, appears to constitute the information provided to him, and does not include information regarding SMART Recovery.

Finally, Defendants do not explain how Mr. Diggs could have accessed SMART Recovery meetings during his time as a Level I or Level II patient on the ISRU. By the terms of the 2016 Packet only Level III patients are permitted to access the mall. *See* 2016 Packet at 2. Defendant Davis represents that SMART Recovery was "offered at an off-unit mall site." Davis Decl. ¶ 10. Thus, even if SMART Recovery was offered during Mr. Diggs's time as a Level I and Level II patient, and even if he was informed of its existence, the facts suggest he could not have physically made his way to SMART Recovery meetings. This provides further support for Mr. Diggs's argument that, before October 2017, he was required to attend NA/ AA/ MA meetings.

*Inouye* instructs that summary judgment is inappropriate where the parties dispute whether a secular alternative was available to a religious drug treatment program. *See* 504 F.3d at 711. Here, the parties dispute this very issue. Accordingly, summary judgment is DENIED.

2. Qualified Immunity

Defendants argue that they are entitled to qualified immunity because the law permits an institution to offer religious recovery programs so long as the institution also offers a secular program; that Defendants made the secular SMART Recovery meetings available to Mr. Diggs; and that Defendants thus did not violate clearly established law. *See* MSJ at 15, 20. Again, although Defendants correctly summarize the law, *see Inouye*, 504 F.3d at 714-717, they have failed conclusively to establish that the secular SMART Recovery meetings were in fact available to Mr. Diggs. Because this key fact underlies Defendants' qualified immunity argument, but has not been established, Defendants are not entitled to summary judgment on the basis of qualified immunity.

C. Referral to *Pro Se* Prisoner Mediation Program

This case appears a good candidate for the court's mediation program. Good cause appearing therefor, this case is now referred to Magistrate Judge Illman for mediation or

settlement proceedings pursuant to the *Pro Se* Prisoner Mediation Program. The proceedings will take place within 120 days of the date this order is filed. Magistrate Judge Illman will coordinate a time and date for mediation or settlement proceedings with all interested parties and/or their representatives and, within five days after the conclusion of the proceedings, file with the Court a report on those proceedings.

Plaintiff must attend and participate in the mediation or settlement conference proceedings. The conference may be set up so that he will appear in person, by videoconference, or by telephone; plaintiff must attend whatever format Magistrate Judge Illman chooses. Plaintiff is cautioned that he may be sanctioned for failure to comply with an order to participate in a mediation or settlement conference, and such sanctions may include dismissal of part or all of the action. *See* Fed. R. Civ. P. 16(a), (f), and 41(b).

## V. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **DENIED.** Docket No. 52. The motion is denied because there are triable issues of fact as to whether a secular alternative to the AA/ NA/ MA program was made available to Mr. Diggs.

This action is now referred to Magistrate Judge Illman for mediation or settlement proceedings pursuant to the *Pro Se* Prisoner Mediation Program. The Clerk shall send a copy of this order to Magistrate Judge Illman.

This order disposes of Docket No. 52.

**IT IS SO ORDERED**.

Dated: November 28, 2022

_____
EDWARD M. CHEN
United States District Judge